IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| BROTHERHOOD MUTUAL INSURANCE COMPANY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 11-cv-01326-AW |
| LATISHA CARTER, *et al.*, | * | |
| Defendants. | * | |

**************************************************************************

## Memorandum Opinion

Currently before the Court in this interpleader action are: (1) a Motion for Partial Summary Judgment by Claimants Rhonda Tabron, individually and as guardian *ad litem* for D.T.; Berlette McMillan, individually and as guardian *ad litem* for K.M.; and Shanik Shreeves, Doc. No. 27; and (2) a Cross-Motion for Summary Judgment by Plaintiff Brotherhood Mutual Insurance Company ("Brotherhood"), Doc. No. 30. The three Claimants, individually and as guardians *ad litem* for their minor children, seek partial summary judgment on their Counter-Claim for Declaratory Judgment. *See* Doc. No. 17. Claimants Rayanne Carter, individually and as guardian *ad litem* for C.W. and C.C., and Tanikia Jones, have filed Answers in this interpleader action but are not otherwise involved in the present motions. *See* Doc. Nos. 10, 25. Claimant Latisha Carter, individually, and as guardian *ad litem* for W.C., N.C. and M.C., has not made an appearance in this action after waiving service of summons on May 26, 2011. *See* Doc. No. 11.

The Court has reviewed the entire record, as well as the pleadings and exhibits, with respect to the motions under review, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons set forth below, the Court DENIES Claimants' Motion for Partial Summary Judgment and GRANTS Plaintiff's Cross-Motion for Summary Judgment.

## I.       FACTUAL & PROCEDURAL BACKGROUND

The parties do not dispute the facts relating to the motor vehicle accident that gave rise to this action. On June 16, 2010, a group of 13 church members, including seven children, were headed home from a retreat in a van owned by Open Heart Church of Christ, Inc. ("Open Heart"). During the drive, the van's left rear tire lost pressure. The driver, Claimant Latisha Carter, lost control of the van, which rolled over several times. The resulting single-vehicle accident caused significant injuries to those on board, although at this point, the exact nature and extent of each individual's injury is unknown. Open Heart had taken out an insurance policy on the van with Brotherhood Mutual Insurance Company.

Upon investigating the accident, Brotherhood found that the injuries sustained were quite likely to exceed what it considered to be the insurance policy's aggregate limit of $1,000,000. Realizing that the claims of the individuals would be in competition with each other, Brotherhood brought the present interpleader action pursuant to 28 U.S.C. § 1335, by which it sought to serve as a mere stakeholder, depositing the $1,000,000 proceeds with the Court to permit the resolution of the competing claims and avoid exposure to multiple liability.

On July 6, 2011, after waiving service of summons, Claimants Rhonda Tabron, Berlette McMillian, and Shanik Shreeves, as individuals and as guardians *ad litem* of K.M. and D.T., filed a Counter-Claim for Declaratory Judgment alleging that Brotherhood's total obligation to

2

Claimants was actually $2,000,000 rather than $1,000,000. *See* Doc. No. 17. Claimants'

contention stems from the fact that Open Heart took out liability insurance coverage of

$1,000,000 as well as uninsured motorist coverage of $1,000,000. Brotherhood subsequently

filed an Answer to Claimants' Counter-Claim in which it denied that the uninsured motorist

coverage applied to provide coverage over the alleged $1,000,000 liability limit. *See* Doc. No.

20.

On November 30, 2011, these Claimants filed a Motion for Partial Summary Judgment

on the grounds that Brotherhood's total obligation pursuant to the terms of the liability policy

and endorsements is $2,000,000. *See* Doc. No. 27. Brotherhood then filed a Cross-Motion for

Summary Judgment on the grounds that Claimants are entitled to a maximum of $1,000,000

under the clear and unambiguous language of the insurance policy and endorsements. *See* Doc.

No. 30. The issue is essentially one of contract interpretation, and the motions are ripe for

review.


## II.      STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex

Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in

favor of the nonmoving party, including questions of credibility and of the weight to be accorded

to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (*citing

Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). As a general rule, summary

judgment is not appropriate prior to the completion of discovery. *Minter v. Wells Fargo Bank,*

*N.A.*, 593 F. Supp. 2d 788, 792 (D. Md. 2009). Rule 56(f) provides the Court with discretionary authority to deny premature motions for summary judgment where the nonmoving party demonstrates that he has not had adequate time for discovery or needs additional time to complete it. Fed. R. Civ. P. 56(f). *See id.*

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).


## III.   ANALYSIS

The question before the Court is whether the business auto insurance policy purchased by Open Heart entitles Claimants to collect from the policy's $1,000,000 uninsured motorist coverage in addition to the $1,000,000 liability insurance coverage. Whether Claimants can collect on both forms of coverage depends on the terms of the insurance policy and is a purely legal question of contract interpretation. In Maryland, an insurance policy is a contract, and the words of an insurance policy are to be given their ordinary meaning. *C&H Plumbing & Heating, Inc. v. Emp'rs Mut. Cas. Co.*, 287 A.2d 238, 239 (1972).

Claimants argue that the liability policy is ambiguous. Under Maryland law, the interpretation of a contract, including the determination of whether a contract is ambiguous, is a

question of law for the court to decide. *See Washington Metro Area Transit Auth. v. Potomac Inv. Prop.*, 476 F.3d 231, 235 (4th Cir. 2007) (citing *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 2003) (a court must first determine where a contract is ambiguous or unambiguous). The language of a contract is ambiguous if "it is subject to more than one interpretation when read by a reasonably prudent person." *Id*. at 547 (citing *Langston v. Langston*, 784 A.2d 1086, 1095 (2001)).

If the contract's language is unambiguous, the court will give effect to its plain meaning while also considering the context in which the language appears.  *See Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 546 (2003); *see also DeJarnette v. Fed. Kemper Ins. Co*, 475 A.2d 454, 460 (1984) ("[W]here there is no ambiguity in an insurance contract, the court has no alternative but to enforce the policy's terms. A strained or unreasonable construction of the policy language should not be indulged in.") (citing *Scherschlight v. Empire Fire & Marine Ins. Co.*, 494 F. Supp. 936 (D.S.D. 1980), *aff'd*, 662 F.2d 470 (8th Cir. 1981)).

Open Heart's insurance policy provides both liability insurance coverage and uninsured motorist coverage. *See* Doc. No. 1 Ex. 1 at 3. Claimants acknowledge that the liability insurance coverage is capped at $1,000,000, and the uninsured motorist coverage is also capped at $1,000,000. However, they contend that the uninsured motorist coverage applies in this case in addition to the liability insurance coverage.

Upon first glance, it would seem clear that the policy's uninsured motorist coverage would be inapplicable in this situation, where the single van involved in the accident was covered by $1,000,000 liability insurance.  However, under Brotherhood's policy, the "uninsured motorist" coverage also encompasses under-insured motor vehicles. A motor vehicle is under-insured under the terms of the policy if, *inter alia*, "the sum on the limits for bodily injury

liability is … [r]educed by payment to other persons injured in the 'accident' to an amount less than the limit of liability for this coverage." Doc. No. 1 Ex. 1 at 23. In the instant action, the motor vehicle was actually under-insured, despite the $1,000,000 liability insurance, because that coverage purchased was inadequate considering the severity of injuries incurred. Accordingly, it seems that the "uninsured motorists" coverage applies to the single-vehicle accident at issue and is one route by which Claimants could secure $1,000,000 under the terms of the policy.

However, it does not follow that Claimants can recover $1,000,000 separately from both forms of coverage. Despite several creative arguments by Claimants, the clear language of the policy limits coverage to $1,000,000 aggregate per accident. This is reiterated at several points throughout the policy and endorsements. Under "Limit of Insurance", the policy provides that:

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages … resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations. … No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

Doc. No. 1. Ex. 1 at 9. Under "Two or More Coverage Forms or Policies Issued By Us", the policy provides that:

> If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

Doc. No. 1 Ex. 1 at 13.

A plain reading of these provisions reveal that Claimants are limited to recovering the maximum amount from only one form of coverage. This means that Claimants are limited to recovering on either the maximum $1,000,000 liability insurance coverage or, perhaps theoretically, the $1,000,000 uninsured motorist coverage. The crucial part is the "or"; Claimants cannot collect on both. Claimants acknowledge that a plain reading of the "Limit of Insurance" provision limits their claim to $1,000,000. However, they argue that this provision is modified and superseded by language in the Maryland Uninsured Motorist Coverage endorsement. Specifically, the endorsement provides, under "Changes in Conditions", "Other Insurance", that

> If this Coverage Form and any other Coverage Form or policy providing *similar insurance* apply to the same "accident", the maximum Limit of Insurance under all Coverage Forms or policies shall be the highest applicable Limit of Insurance under any one Coverage Form or Policy.

Doc. No. 1 Ex. 1 at 22 (emphasis added). Claimants argue that the uninsured motorist coverage is not "similar insurance" to the liability insurance coverage, so that Claimants are not thereby limited to recovering from only one form of coverage.

Claimants' argument fails on several levels. First, the section of the endorsement quoted by Claimants does not modify the "Limit of Insurance" section in the policy, but rather the "Other Insurance" section. Thus, the policy's "Limit of Insurance" provision still applies to limit Claimants to recover the maximum amount from only one form of coverage, here, $1,000,000.

Moreover, Claimants' contentions lead to absurd results clearly not intended by the contracting parties. Accepting Claimants' interpretation would render the uninsured motorist coverage a supplement to the liability insurance coverage, since the motor vehicle at issue cannot be considered under-insured, rendering the "uninsured motorist" coverage applicable, until the liability insurance coverage is "used up," or insufficient to cover the injuries sustained. If the

7

uninsured motorist coverage was able to "spring forth" any time claimants exhausted their liability insurance coverage, claimants would be able to benefit from an effective $2,000,000 liability insurance rather than the $1,000,000 coverage they actually bargained for. The Court declines to read the contract to provide this absurd result. Crudely speaking, uninsured motorist coverage is meant to protect the insured from other at-fault motorists without insurance, whereas liability insurance coverage is generally meant to protect the insured who is at fault. Although in this situation both forms of coverage appear applicable, supplementing them in the way suggested by Claimants would be to ignore the underlying purposes of each form of coverage. These purposes served as part of the basic understanding upon which the parties contracted. Considering and giving effect to the parties' understanding and viewing the contract as a whole, and also in light of its plain language, the Court finds that Claimants are limited to $1,000,000 coverage for the single motor vehicle accident.

## IV.     CONCLUSION

For the foregoing reasons, Claimants' Motion for Partial Summary Judgment is denied and Plaintiff's Cross-Motion for Summary Judgment is granted. A separate Order will follow.

January 26, 2012                                                    /s/
         Date                                      Alexander Williams, Jr.
                                                   United States District Judge